**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable A. Bruce Campbell**

| | |
|---|---|
| In re: )<br>)<br>CHRISTOPHER S. WALKER )<br>)<br>Debtor. )<br>_____ )<br>SIMON E. RODRIGUEZ, Chapter 7 Trustee, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>SCOTT WHATCOTT, )<br>)<br>Defendant. )<br>_____ ) | Case No. 07-17102 ABC<br>Chapter 7<br><br>Adversary No. 07-1500 ABC |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RULING

Bankruptcy Trustee, Simon Rodriguez's ("Trustee"), complaint against Scott Whatcott ("Defendant") seeks to avoid, under 11 U.S.C. § 547(b), the transfer which occurred when the Defendant's judgment lien was recorded against real property owned by the Debtor. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 28 U.S.C. § 157(a) and (b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F), as it is a proceeding to determine, avoid and/or recover a preference. This adversary proceeding came on for trial on May 15, 2008. The Court having considered the evidence and arguments presented, makes the following findings of fact, conclusions of law and ruling.

Prior to the filing of his bankruptcy petition, Christopher Walker (the "Debtor") owned real property located in El Paso County, Colorado at 850 Neon Moon View, Manitou Springs, Colorado (the "Property"). On May 8, 2007, Steven H. Walker IRA, a creditor of the Debtor, recorded a transcript of judgment, at Reception Number 207062999, in the El Paso County real estate records. By operation of Colorado law, the recording of this transcript of judgment created a lien against all real property owned by the Debtor in El Paso County, including the Property. C.R.S. § 13-52-102(1); *Sky Harbor, Inc. v. Jenner*, 164 Colo. 470, 475-76, 435 P.2d 894, 896-97 (Colo. 1968). Defendant obtained an assignment of the Steven H. Walker IRA judgment on June 13, 2007. The assignment was recorded in the El Paso County real estate records on June 14, 2007. The lien created by the recording of the Steven H. Walker IRA transcript of judgment is hereinafter referred to as the "Judgment Lien."

On July 2, 2007, fifty-five days after the creation of the Judgment Lien, the Debtor filed his Chapter 7 bankruptcy petition. In his schedules, the Debtor listed the Property and valued it at $270,000. The schedules reflect that the Property was subject to a first deed of trust in favor of Washington Mutual, in the amount of $123,724.70, a second deed of trust in the amount of $11,000, and a third deed of trust in favor of Greg Carr, the Debtor's uncle, in the amount of $150,000. Testimony at the trial indicated that there is another lien on the Property, for homeowners' assessments, in the amount of $3,916.00.

The Debtor's bankruptcy case was filed on the last day of the redemption period of a foreclosure sale by the holder of the $11,000 second deed of trust. The Trustee exercised the right of redemption on behalf of

the estate. In order to accomplish the redemption, the Trustee borrowed funds from a third party pursuant to an Amended Financing Agreement which was approved by the Court. According to this agreement, the party loaning the redemption funds will be repaid upon sale of the Property, after costs of sale and payment of the first deed of trust, the Judgment Lien (if it is not avoided), and payment of the homeowners' assessment lien.

In a separate adversary proceeding, the Trustee avoided the $150,000 third deed of trust in favor of the Debtor's uncle. That adversary proceeding was resolved by a stipulated judgment which provided that the uncle's deed of trust was avoided pursuant to 11 U.S.C. § 547(b)[1] and preserved for the benefit of the bankruptcy estate pursuant to § 551.

The Property is currently listed for sale by the Trustee at a price of $279,900. The Property has been listed at this price for six months. The Trustee has received one offer, in the amount of $205,000, which he rejected. The Property is not currently in good condition. It has been subject to neglect and possibly vandalism. The Trustee testified that he was seeking Court approval of payment of an administrative expense to repair the Property, and that once the Property is cleaned up, he believed it would sell at or near the listing price.

The Trustee testified that the only real asset in the estate is the Property. The Trustee has notified creditors of a possible dividend in the case. The deadline to file proofs of claim is July 21, 2008. At the time of the trial, approximately $180,000 in unsecured claims had been filed. The Trustee expected an additional $150,000 unsecured claim would be filed by the Debtor's uncle for the money he loaned to the Debtor. There are significant administrative expenses in the estate, including attorneys' fees, the funds borrowed to redeem the Property, and the amounts for cleaning and repairs. There is no question, and Defendant did not dispute, that there will not be sufficient assets in the estate to pay general unsecured creditors 100% of their claims.

According to the Bankruptcy Code, the creation of the Judgment Lien by recording of the transcript of judgment now held by Defendant was a transfer of an interest of the Debtor in property. § 101(54)(A). This transfer is avoidable as a preference, under § 547(b), if the transfer (1) was made to or for the benefit of a creditor; (2) was for or on account of antecedent debt owed by the debtor; (3) was made while the debtor was insolvent; (4) was made on or within 90 days before the date of filing of the petition; and, (5) enables the creditor to receive more than such creditor would receive in a Chapter 7 case if the transfer had not been made. *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196 (10th Cir. 2002). The burden of proof is on the Trustee to establish all of these elements. *Id.*; § 547(g).

The parties agree, and the undisputed facts show, that there is no question that the first four elements listed above have been met. The parties disagree only as to whether the Trustee has established the requirement of § 547(b)(5) that the Judgment Lien enables Defendant to receive more than he would receive in this Chapter 7 case if that transfer had not been made.

In an insolvent estate, the analysis of the § 547(b)(5) test is easy:

> [A]s long as the distribution in bankruptcy is less than one-hundred percent, *any* payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made.

*Elliot v. Frontier Properties (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416, 1421 (9th Cir. 1985)(emphasis in original). *See also, Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S. Ct. 450 (1936).

---

[1] All future references to "section" or "§" in this Ruling refer to the Bankruptcy Code, Title 11, United States Code, unless otherwise indicated.

Defendant argues that there is no equity in the Property in excess of the liens which are higher in priority than the Judgment Lien. He claims that the value of the Property is $205,000, or at most $280,000. Thus, after payment of the first deed of trust,[2] the homeowners' assessment lien, and the $150,000 to the estate on account of the "preserved" third deed of trust to his uncle, there will be nothing to distribute to him on account of the Judgment Lien. He contends that the Judgment Lien is worthless, and therefore, the Trustee has not shown that the attachment of that lien enables him to receive anything of value. Thus, the Trustee cannot meet his burden to establish all of the elements necessary to avoid the Judgment Lien.

The Trustee acknowledges that even if the Property were sold for $280,000, after paying costs of sale, the first deed of trust, and the homeowners' assessment lien, there will be less than $150,000 remaining. Taking the values most favorable to the Trustee, the sales proceeds of the Property would be distributed as follows:

| | |
|---|---|
| Sales Price | $ 280,000 |
| Less broker's commission (5%) | (14,000) |
| Less amount due on first deed of trust | (123,725) |
| Less amount due on homeowners' assessment lien | (3,916) |
| Balance remaining | $ 138,359 |

The entire remaining balance of $138,359 would be paid to the Trustee for the benefit of the estate on account of the Debtor's uncle's deed of trust which was avoided under § 547(b), and preserved under § 551. The Trustee, however, argues that the Defendant did receive something of value by virtue of the Judgment Lien. The Trustee asserts that the property rights inherent in any lien, *i.e.*, the ability to foreclose the lien or the right to redeem from a foreclosure sale on a higher priority lien, are worth something even though in a case like this, it is difficult to place an exact dollar value on those rights.[3]

---

[2] Defendant testified that the current balance due on the first deed of trust must be at least $140,000, assuming that no payments have been made since the Debtor's bankruptcy case was filed. There was no evidence which precisely established the current amount necessary to pay off the first deed of trust. However, for purposes of the legal analysis herein, it makes no difference whether that amount is $123,000 (as shown in the Debtor's schedules) or $140,000, as the Defendant estimated.

[3] The Trustee's argument is supported by the time-honored proposition in American bankruptcy jurisprudence that a creditor's lien rights are generally unaffected by a Chapter 7 bankruptcy. Liens which are not avoided in Chapter 7 and the *in rem* interest they create will pass through a Chapter 7 bankruptcy case unaffected. *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 778 (1992). In *Dewsnup*, the Supreme Court ruled that a secured creditor is entitled to the benefit of any increase in value of the property following the filing of a Chapter 7 bankruptcy, to the exclusion of the debtor and his unsecured creditors. The lienholder's right to maintain his lien after the bankruptcy case is filed and to look to the interest in property for the satisfaction of its claim has value. And in this case, the Judgment Lien, if unavoided, will create a cloud on the title to the Property such that the Trustee will be required to deal with the Judgment Lien in some way in order to be able to sell the Property. He will be forced incur more administrative expense and delay if he is required to eliminate the Judgment Lien through foreclosure of the Debtor's uncle's third deed of trust, or, as a practical matter, he will be required to negotiate the release of the Judgment Lien in exchange for some payment to Defendant. The Trustee maintains that there is certainly some value in this *in rem* interest, and, therefore, since unsecured creditors will receive less than 100% payment on their claims, the Judgment Lien does enable Defendant to receive more than he would have received in this Chapter 7 liquidation if he did not hold the Judgment Lien. *But see, Koch v. Rogers (In re Broumas)*, 135 F.3d 769 (4th Cir. 1998)(unpublished opinion).

Defendant has further argued that since he paid in excess of $16,000 to obtain an assignment of the Judgment Lien, he will not receive any value on account of it unless he receives more than what he paid. The transfer that the Trustee seeks to avoid in this case, however, is not the assignment of the lien from the original judgment creditor to Defendant. It is the original creation of the Judgment Lien. By virtue of the creation of the Judgment Lien, the original judgment creditor obtained an interest in the Property. Defendant, by virtue of the assignment of the transcript of judgment to him, stands in the shoes of and is treated as though he were the original judgment creditor. Prior to the recording of its transcript of judgment, the judgment creditor was wholly unsecured. When the Judgment Lien was created, the creditor obtained an *in rem* interest in the Property, and it is the value attributable to that interest which is evaluated and compared to the distribution the creditor would have received had he remained wholly unsecured, when applying the § 547(b)(5) "greater amount test."

3

Whether or not the Court concurs with the Trustee's rationale, it concludes that the rights granted to the Trustee in § 551, to preserve the Debtor's uncle's $150,000 third deed of trust "for the benefit of the estate," allow the Trustee to satisfy the final requirement for avoidance of a preference as set forth in § 547(b)(5). The purpose of § 551 is to preserve the value of the avoided transfer for the benefit of the bankruptcy estate's unsecured creditors and to prevent lienholders junior to the avoided lien from improving their position at the expense of the estate. *Morris v. St. John Nat'l Bank (In re Haberman)*, 516 F.3d 1207, 1210 (10th Cir. 2008). *See,* 5 Collier on Bankruptcy ¶ 551.01[2] at 551-2 (15th ed. 2008)("[i]f the avoided lien is of no benefit to the estate, the preserved lien may be relinquished by the trustee"). The avoided lien, now held by the Trustee for the benefit of the estate, does not, on liquidation of the Property, result in funds going to a secured creditor. On the contrary, it results in funds going into this bankruptcy estate for distribution under § 726. The avoided lien is thus removed from the calculation of the sum of liens senior to the Judgment Lien in determining if there would be, absent avoidance of the Judgment Lien, proceeds for distribution to the holder of the Judgment Lien, thereby enabling him to receive more than he would otherwise receive in Chapter 7 for § 547(b)(5) purposes. On the facts of this case, the "greater amount test" is satisfied by the Trustee.

The Trustee, having established all of the elements of § 547(b), is entitled to a judgment in his favor, avoiding Defendant's Judgment Lien and preserving it for the benefit of the estate. A separate judgment will enter accordingly. The Trustee shall be awarded his costs in this adversary proceeding.

Dated: June 12, 2008.

BY THE COURT:

A. Bruce Campbell
United States Bankruptcy Judge

4